# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| FRANK KONARSKI *et al.*, | : | | |
| | : | | |
| Petitioners, | : | Civil Action No.: | 10-1733 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 2, 7, 8, 9, 10, 11, |
| | : | | 12, 13, 14, 15, 18 |
| SHAUN DONOVAN *et al.*, | : | | |
| | : | | |
| Respondents. | : | | |

## MEMORANDUM OPINION

**DENYING THE PETITIONERS' MOTION FOR A PRELIMINARY INJUNCTION; GRANTING THE PETITIONERS' MOTION TO JOIN A PARTY[1]; DENYING THE PETITIONERS' MOTIONS FOR RECUSAL[2]; DENYING THE PETITIONERS' MOTION FOR RELIEF UPON RECONSIDERATION[3]; DENYING THE PETITIONERS' MOTION TO DISQUALIFY RESPONDENTS' COUNSEL; DENYING THE PETITIONERS' MOTION TO STRIKE THE MOTION TO DISMISS; DENYING THE PETITIONERS' MOTIONS FOR TELEVISED PROCEEDINGS[4]; DENYING THE PETITIONERS' MOTION FOR IMMEDIATE COPIES OF THE TRANSCRIPT AND VIDEOTAPE; DENYING THE PETITIONERS' MOTION FOR EXPEDITED MEDIATION**

---

[1] During the October 15, 2010 hearing, petitioner Frank Konarski appeared and sought leave to add his son as a petitioner; the government did not object and the court grants this request. *See* Hr'g Tr. at 2; *see also* Pet'rs' Mot. to Join Party, Ex. 1.

[2] The petitioners have filed three motions all of which request that the undersigned judge recuse himself from this case. *See* Pet'rs' Expedited Mot. for Immediate Change of Judge & to Vacate the 10/15/10 Ruling; Pet'rs' Emergency Mot. to Assign a New Judge; Pet'rs' Emergency Mot. for a Neutral Judge. The court refers to these motions as the petitioners' motions for recusal.

[3] One of the petitioners' motions asks the court to vacate its October 15, 2010 ruling denying the petitioners' motion for a temporary restraining order. *See* Pet'rs' Expedited Mot. for Immediate Change of Judge & to Vacate the 10/15/10 Ruling. The court treats that part of the motion as a motion for relief upon reconsideration of the court's interlocutory order pursuant to Federal Rule of Civil Procedure 54(b).

[4] The petitioners have filed two motions seeking nearly identical relief, *i.e.*, the televising of future court proceedings. *See* Pet'rs' Mot. for Televised Proceedings; Pet'rs' Mot. for the Videotaping of All Future Court Hearings.

## I. INTRODUCTION

The petitioners are the owners of an apartment building who allege that the respondents have unlawfully obstructed their ability to rent to tenants receiving federal housing assistance. On October 15, 2010, the court held a hearing on the petitioners' motion for a temporary restraining order. After hearing argument from both sides, the court denied the petitioners' motion. This matter now comes before the court on a multitude of motions filed by the petitioners following the denial of their motion. For the reasons discussed below, with the exception of the petitioners' motion to join a party, the court denies the petitioners' motions.

## II. FACTUAL & PROCEDURAL BACKGROUND

The petitioners are the owners of an apartment building in Tucson, Arizona ("the City"). Pet. ¶ 3. They allege that certain City officials working under the authority of the Department of Housing and Urban Development ("HUD") have conspired to keep them from renting to tenants receiving federal assistance through the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8"). *See generally id.*

The respondents aver that in 2001, the City advised petitioner Frank Konarski[5] that it would no longer approve new Section 8 housing contracts with him due to "numerous complaints expressed by the tenants and the continuing problems imposed on [its] staff." Respts' Mot. to Dismiss & Opp'n to Pet'rs' Mot. for a TRO ("Respts' 1st Opp'n") at 3, Ex. 1. Since that time, the petitioners have engaged in near constant – though unsuccessful – litigation with the City. *See* Respts' 1st Opp'n, Exs. 1-3; *see generally Konarksi v. Valfire*, 2003 WL 21421731 (9th Cir. June 13, 2003); *Konarski v. City of Tucson*, 2008 WL 3850510 (9th Cir. Aug.

---

[5] The petitioners are Frank Konarski and his son, Frank E. Konarski. *See* Pet.; Pet'rs' Mot. to Join a Party.

18, 2008). Nevertheless, the petitioners continued to submit Section 8 contracts to the City and, on May 25, 2010, the City approved two of these contracts. Pet. ¶ 20; Respts' 1st Opp'n at 4. Eight days later, the City sent a letter to the petitioners explaining that "[t]he two contracts for the above properties were improvidently signed and will not be processed." Pet. ¶ 22; Respts' 1st Opp'n at 4.

On October 13, 2010, petitioner Frank Konarksi filed a petition for a writ of mandamus against the Department of Housing and Urban Development ("HUD") and HUD Secretary, Shaun Donovan,[6] seeking an order compelling the respondents to intercede in his Section 8 dealings with the City and alleging that that a "select-few highly corrupt city administrative officials under Respondent HUD's control" harbor a "personal vendetta" against them. Pet. ¶ 7. As part of this vendetta, the petitioners contend that the officials have undermined the free choice given to Section 8 tenants by steering potential and current tenants living in the petitioners' building elsewhere. *Id*. ¶¶ 10-39. The petitioners ask the court to order the respondents to "rid the Section 8 Housing/Housing Choice Voucher program of the personal vendetta of its city administrative officials." *Id*. ¶ B.[7]

Contemporaneously with the petition, petitioner Frank Konarski filed a motion for a temporary restraining order and a preliminary injunction. *See generally* Pet'rs' Mot. for a TRO & Prelim. Inj. ("Pet'rs' TRO Mot."). The respondents filed a combined motion to dismiss and opposition to the petitioners' motion. *See generally* Respts' 1st Opp'n.

On October 15, 2010, the court held a hearing on the petitioners' motion for a temporary restraining order, at the conclusion of which the court denied the petitioners' request for

---

[6] The petitioners also list as respondents Does one through ten. *Id*. ¶ 6.

[7] The paragraphs containing the allegations in the petition are numbered numerically and the paragraphs in the prayer for relief is numbered alphabetically. *See generally* Pet.

injunctive relief. *See generally* Hr'g Tr. Subsequently, the petitioners have filed a myriad of motions seeking a variety of relief. *See* Pet'rs' Expedited Mot. for Immediate Change of Judge ("Pet'rs' 1st Recusal Mot.") & to Vacate the 10/15/10 Ruling ("Pet'rs' Mot for Relief Upon Recons."); Pet'rs' Emergency Mot. to Assign a New Judge ("Pet'rs' 2d Recusal Mot."); Pet'rs' Mot. for a Neutral Judge ("Pet'rs' 3d Recusal Mot."); Pet'rs' Mot. to Assign a New Attorney for HUD ("Pet'rs' Mot. to Disqualify Respts' Counsel"); Pet'rs' Mot. to Strike Mot. to Dismiss ("Pet'rs' Mot. to Strike"); Pet'rs' Mot. for Televised Proceedings ("Pet'rs' 1st Mot. for Recorded Hearings"); Pet'rs' Mot. for the Videotaping of All Future Court Hearings ("Pet'rs' 2d Mot. for Recorded Hearings"); Pl.s' Mot for the Tr. & Videotape ("Pet'rs' Mot. for Tr."); Pet'rs' Mot. for Expedited Mediation ("Pet'rs' Mot. to Compel Mediation").

The respondents filed a consolidated response, *see generally* Respts' Omnibus Response to Pet'rs' Mots. ("Respts' 2d Opp'n"), and the petitioners filed a consolidated reply, *see generally* Pet'rs' Reply in Support of Motions ("Pet'rs' Reply"). With those motions fully briefed, the court turns to the parties' arguments and the applicable legal standards..

### III. ANALYSIS

#### A. The Court Denies the Petitioners' Motion for a Preliminary Injunction

##### 1. Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important

for the movant to demonstrate a likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### A. The Petitioners Have Failed to Demonstrate a Likelihood of Succeeding on the Merits of Their Claims

The petitioners have moved for a preliminary injunction requiring the respondents "to have its city administrative officials to comply with applicable polic[i]es, [the] federal code of regulations, and other program requirements – to take affirmative action grounded in statute and codes to immediately restrain the federal-code-defiant activities of its city administrative officials." Pet'rs' TRO Mot. at 14. The respondents opposed the motion arguing that they are not parties to the contracts between the petitioners and the City and that the petitioners are not "entitled to an order compelling compliance with the broad statutory mandate that HUD affirmatively further the goals of fair housing." Respts' Opp'n at 10-11.

5

The petitioners contend that a "select-few highly corrupt [Tucson] city administrative officials" are engaging in the "retaliatory administration of the Section 8 Housing [] Choice Voucher program," Pet'rs' TRO Mot. at 7, and that HUD has the authority and duty to require that these officials comply with HUD regulations, *id.* at 9-10. Ultimately, the petitioners' seek a writ of mandamus compelling the respondents to intervene in the local administration of the Section 8 program in the City of Tucson. *See generally* Pet. The respondents maintain that the actions the petitioners want them to perform are purely discretionary, thus precluding mandamus relief, *see* Respts' Opp'n at 10; Hr'g Tr. at 17-20, and that the petitioners' claims otherwise fail on res judicata grounds, Respts' Opp'n at 14.

The Mandamus Act authorizes district courts to issue mandamus orders compelling federal officials to perform ministerial or non-discretionary duties. 28 U.S.C. § 1361. A writ of mandamus is "an extraordinary [remedy] . . . to be utilized only under exceptional circumstances." *Haneke v. Sec'y of Health, Educ. & Welfare,* 535 F.2d 1291, 1296 (D.C. Cir. 1976). "The necessary prerequisites for this court to exercise its mandamus jurisdiction are that (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Swan v. Clinton,* 100 F.3d 973, 977 n.1 (D.C. Cir. 1996) (internal quotations omitted). The plaintiff bears the "heavy burden" of showing that its right to issuance of the writ is "clear and indisputable." *In re Cheney,* 334 F.3d 1096, 1102, 1107 (D.C.Cir.2003) (internal quotations omitted).

Here, the petitioners have submitted a lengthy account of the ways in which they believe they have been wronged by City officials and how those officials have violated HUD regulations. *See generally* Pet.; Pet'rs' TRO Mot. They have not, however, offered any support for their contention that the respondents have a "clear duty to act" in connection with their

dispute. *See generally* Pet.; Pet'rs' TRO Mot. Although the petitioners list instances in which HUD has allegedly intervened with the local administration of Section 8 programs in other cities, Hr'g Tr. at 22, they have not explained why this compels HUD to do the same here. Likewise, although the petitioners invoke the policy declaration in the Public Health and Welfare statute, 42 U.S.C. § 1437, and HUD regulations governing the administrative fees associated with Section 8, 24 C.F.R. § 982.152, and the rights of Section 8 beneficiaries with respect to the contracts between landlords and the local housing authorities, 24 C.F.R. § 982.456, they do not explain how these statutes and regulations impose a "clear duty" on the respondents to act. Pet'rs' TRO Mot. at 10. Thus, the court is unable to conclude that there is a "substantial indication" that the petitioners will ultimately be successful in obtaining the extraordinary remedy of a writ of mandamus. Accordingly, the court denies their motion for a preliminary injunction. *See Demjanjuk v. Meese*, 784 F.2d 1114, 1117-18 (D.C. Cir.1986) (declining to reach the issue of irreparable injury and denying the plaintiff's request for injunctive relief because he had failed to demonstrate a likelihood of success on the merits).

### B. The Court Denies the Petitioners' Motions for Recusal

The petitioners argue that the undersigned judge harbors a bias against Konarski Sr. and ask that a different judge be assigned to adjudicate their case. *See generally* Pet'rs' 1st Recusal Mot.; Pet'rs' 2d Recusal Mot.; Pet'rs' 3d Recusal Mot. The respondents, however, point out that unfavorable judicial rulings do not constitute evidence of bias or impartiality for the purpose of recusal. *See* Respts' Opp'n at 4-5.

Federal law provides that "[any] justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The question is whether a reasonable and informed observer

would question the judge's impartiality." *United States v. Microsoft*, 253 F.3d 34, 114 (D.C. Cir. 2001)). The party seeking recusal must "show a true personal bias [] and must allege specific facts and not mere conclusions or generalities." *Bhd. of Locomotive Firemen and Enginemen, et al. v. Bangor & Aroostook R.R. Co., et al.*, 380 F.2d 570, 576-77 (D.C. Cir. 1967) (citations omitted). "[J]udicial rulings alone almost never constitute a valid basis for a bias or impartiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

During the October 15, 2010 hearing, the court had to call upon the U.S. Marshals posted in the courtroom to maintain order, Hr'g Tr. at 32-34, due to the petitioners' persistent and escalating interruptions of the in-court proceedings, *see generally id.*; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (recognizing that "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates" (quoting *Anderson v. Dunn*, 19 U.S. 204, 228 (1821))). Until that point, however, the undersigned judge had persistently attempted to help the petitioners narrow their arguments and address the relevant issues. Hr'g Tr. at 5-6, 26-27, 29-30.

Here, the petitioners appear to conclude that, because the undersigned judge exercised his authority to maintain order and, ultimately, denied the petitioners' motion, the undersigned judge harbors some bias against them. *See generally* Pet'rs' 1st Recusal Mot.; Pet'rs' 2d Recusal Mot.; Pet'rs' 3d Recusal Mot. Neither the court's actions during the hearing nor an unfavorable ruling, however, are grounds for recusal. *Liteky*, 510 U.S. at 555; *see also United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2008) (observing that "the judge's conduct during proceedings should

not, except in the 'rarest of circumstances' form the sole basis for recusal" (quoting *Liteky*, 510 U.S. 555)). Accordingly, the court denies the petitioners' motions for recusal.

### C. The Court Denies the Petitioners' Motion for Relief Upon Reconsideration

One of the petitioners' motions seeks, in title only, vacatur of the court's October 15, 2010 order. *See* Pet'rs' Mot. for Recons. Mindful that a *pro se* litigant is afforded more latitude than litigants represented by counsel, *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993), the court construes this motion as seeking relief upon reconsideration of the court's order pursuant to Federal Rule of Civil Procedure 54(b).

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing the Advisory Committee Notes to Federal Rule of Civil Procedure 60(b)). Relief upon reconsideration of an interlocutory decision pursuant to Rule 54(b) is available "as justice requires." *Childers*, 197 F.R.D. at 190. "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted).

Even read broadly, however, the petitioners' motion does not address the factors governing the relief sought. *See generally* Pet'rs' Mot. for Relief Upon Recons. Instead, the petitioners' motion simply repeats the allegations made in their petition, their motion for injunctive relief and their motions for recusal. *See generally id.*; Pet.; Pet'rs' 1st Recusal Mot.;

9

Pet'rs' 2d Recusal Mot.; Pet'rs' 3d Recusal Mot. Accordingly, the court denies the motion for relief upon reconsideration.

### D. The Court Denies the Petitioners' Motion to Disqualify Respondents' Counsel

The petitioners ask the court to assign a new attorney to represent the respondents. *See generally* Pet'rs' Mot. to Disqualify. The respondents conclude, without discussion, that the petitioners' motion has no merit. Respts' Opp'n at 5.

The court has authority to disqualify an attorney from participating in a case before it if there is a conflict of interest or if the attorney has committed ethical violations. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996); *In re Gopman*, 531 F.2d 262, 266 (5th Cir. 1976); *Tucker v. Shaw*, 378 F.2d 304, 307 (2d Cir. 1967). Disqualification, however, "is a drastic measure that is disfavored" by the courts, *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004), and "disqualification motions should be subject to 'particularly strict judicial scrutiny,'" *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quoting *Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)).

In this case, the petitioners allege that the respondents' attorney made "misrepresentations and false statements," Pet'rs' Mot. to Disqualify at 2, but never specify what counsel said or did that amounted to such misrepresentations and false statements, *see generally id*. Given the strict scrutiny with which the court must assess this motion, *see Optyl Eyewear*, 760 F.2d at 1050, and the lack of specific allegations by the petitioners, *see generally* Pet'rs' Mot. to Disqualify, the court denies the motion.

### E. The Court Denies the Petitioners' Motion to Strike the Motion to Dismiss

The petitioners ask the court to strike the respondents' motion to dismiss because the respondents' attorney has made "false and misrepresentative statements" to the court. Pet'rs'

Mot. to Strike at 1. The petitioners, however, do not explain what misrepresentations and falsehoods the respondents allegedly made to the court, nor do they provide any evidence that such misrepresentations were actually made. *See generally id.*; *see also generally* Pet'rs' Mot. to Disqualify. Moreover, the petitioners have filed an opposition to the motion to dismiss, *see generally* Pet'rs' Opp'n to Respts' Mot. to Dismiss, and have sought leave to file a surreply in support of their opposition, *see generally* Pet'rs' Mot. for Leave to File a Surreply. Accordingly, the court denies the petitioners' motion to strike.

### F. The Court Denies the Petitioners' Motion for Televised Proceedings & Motion for the Videotaping of Future Court Proceedings

The petitioners' seek to position fixed tripod cameras in the courtroom "to register every proceeding." Pet'rs' 2d Mot. for Recorded Hearings at 1-2. Local Civil Rule 83.1 prohibits "television broadcasting from inside the courthouse during the progress of or in connection with judicial proceedings." LCvR 83.1. The petitioners have provided no authority for the court to disregard this rule. Accordingly, the court denies the petitioners' motions for televised proceedings.

### G. The Court Denies the Petitioners' Motion for Copies of the Transcript and Videotape

The petitioners seek copies of any transcript or videotape of the October 15, 2010 hearing. *See* Pet'rs' Mot. for Tr. The court, however, does not maintain a video record of any hearings and, as noted, the local rules prohibit televising court proceedings. Furthermore, the court reporter recently notified the parties that the transcript is available for them to view (at a public terminal in the courthouse) or purchase. *See* Notice Re Tr. of Proceedings (Dec. 21, 2010).

To the extent the petitioners are asking the court to waive the fee for obtaining the transcript, the court notes that the petitioners paid the filing fee in this case and have not sought

leave to proceed without prepayment of costs. *See* 28 U.S.C. § 1915(a) (granting the court the authority to allow a litigant to proceed without prepayment of fees upon the submission of an affidavit from the litigant listing the litigant's assets and the reasons the litigant is unable to pay the fees). The court, thus, denies this request.

### H. The Court Denies the Petitioners' Motion to Compel Mediation

The petitioners seek an order from the court requiring the parties to engage in immediate mediation. *See generally* Pls. Mot. to Compel Mediation. The respondents respond that mediation would not be productive at this point in the litigation. Respts' Opp'n at 4. Although the court may, in its discretion, require the parties to participate in mediation, *see* LCvR 84.4(a)(2), it declines to do so at this juncture in the proceedings.

## IV. CONCLUSION

For the foregoing reasons, the court denies the petitioners' motion for a preliminary injunction, grants the petitioners' motion to add a party, denies the petitioners' motions for recusal, denies the petitioners' motion for relief upon reconsideration, denies the petitioners' motion to disqualify respondents' counsel, denies the petitioners' motion to strike the motion to dismiss, denies the petitioners' motions for televised proceedings, denies the petitioners' motion for immediate copies of the transcript and videotape and denies the petitioners' motion for expedited mediation. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of February 2011.

                                                  RICARDO M. URBINA
                                                  United States District Judge