UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRANK KONARSKI,** *et al.*, <br><br> Petitioners, <br><br> v. <br><br> **SHAUN DONOVAN, Secretary, U.S. Department of Housing and Urban Development,** *et al.*, <br><br> Respondents. | Civil Action No. 10-1733 (JEB) |

## MEMORANDUM OPINION

Petitioner Frank Konarski and his son, Frank E. Konarski, who has been joined, filed an "Emergency Petition for Writ of Mandamus" in October 2010. See ECF Nos. 1, 8. Petitioner has participated as a landlord in the Section 8 Housing Program in the city of Tucson, Arizona. In his suit, he sought a writ of mandamus ordering United States Department of Housing and Urban Development Secretary Shaun Donovan to intervene in Tucson's "personal-vendetta-driven" administration of its Section 8 program. Pet. at 2. Judge Ricardo Urbina granted Respondents' Motion to Dismiss on September 29, 2011. Petitioners then filed a Motion that essentially sought reconsideration of that decision. See ECF No. 45. When Judge Urbina retired, the case was reassigned to this judge in April 2012. Finding as little merit in Petitioners' allegations as did Judge Urbina, the Court will deny their Motion.

I.  **Background**

The original Petition, like all of the Konarskis' pleadings in the case, generate a great deal more heat than light. According to the Petition, Frank Konarski owns an apartment rental business in Tucson and has served as a landlord to individuals participating in the Section 8

1

Housing/Housing Choice Voucher Program.  Pet., ¶ 3.  He is unhappy with, *inter alia*, the "exacerbated June 2010-and-on rogue, corrupt conduct of the select-few highly corrupt city administrative officials that has run amuck the Section 8 Housing / Housing Choice Voucher program [*sic*]."  Id., ¶ 7.  More specifically, Petitioner complains that city officials have forced his Section 8 tenants to move out of his units.  Id., ¶ 13.  In addition, Tucson officials in 2010 actually approved two of Petitioner's Section 8 contracts before informing him shortly thereafter that these would not be honored.  Id, ¶¶ 15-22.  Instead of suing those officials or the city of Tucson, Petitioner has sought a writ of mandamus from this Court to "Order Respondent HUD to adhere to its mandatory duties . . . in order to rid the Section 8 Housing / Housing Choice Voucher program of the personal vendetta of its city administrative officials so as to release Petitioner's business from being held hostage . . . ."  Id. at 28.

   After Respondents moved to dismiss the case, Plaintiff filed a flurry of other puzzling motions, including a Motion for Expedited Mediation and a Motion for the Videotaping of All Future Court Proceedings for the Safety of Petitioners.  ECF Nos. 10-11.  In granting Respondents' Motion to Dismiss, Judge Urbina relied on two central conclusions.  First, to the extent Petitioners sought redress for Tucson's deprivation of their right to participate in the Section 8 housing program, "the District of Arizona has previously determined that the petitioners possess no right to participate in the Section 8 program."  ECF No. 43 (Mem. Op.) at 6 (citing Arizona cases) (internal quotation marks omitted).  The doctrine of issue preclusion thus barred their claim.  Id. at 8-11.  Second, Petitioners could have brought their breach-of-contract claims relating to the 2010 activities in Arizona state court.  As this adequate alternative remedy was available to them, no mandamus jurisdiction existed here.  Id.

Less than one month after Judge Urbina's ruling, Petitioners filed the instant Motion, in which they seek additional findings under Federal Rule of Civil Procedure 52(b), a vacating of Judge Urbina's ruling under Rule 59, and relief under Rule 54(b).  See ECF No. 45.  After Respondents notified the Court of Petitioners' latest suit filed in Arizona state court, see ECF No. 48, Petitioners also moved to strike the notice.  See ECF No. 49.  On April 20, 2012, the case was reassigned to this judge.

**II.      Legal Standard**

Although Petitioners invoke three separate Federal Rules of Civil Procedure in their Petition, two of them are inapplicable here.  Rule 52(b) permits a court to amend its "findings," which generally refers to its findings of fact.  See Fed. R. Civ. P. 52(a) (distinguishing between findings of fact and conclusions of law).  As Judge Urbina found no facts, this Rule does not apply.  To the extent Plaintiff cites the Rule to refer to findings of law, it is duplicative of Rule 59(e).  Similarly, Rule 54(b) is not relevant here.  It concerns actions the Court may take when dealing with entry of final judgment against some but not all parties.  See, e.g., Outlaw v. Airtech Air Conditioning and Heating, Inc., 412 F.3d 156, 159 (D.C. Cir. 2005) ("It is elementary that a grant of summary judgment as to some parties in a multi-party litigation does not constitute a final order unless the requirements of Fed. R. Civ. P. 54(b) are met.") (citation and internal quotation marks omitted).

The only Rule that the Court must consider here, therefore, is Rule 59(e), which permits a motion to alter or amend a judgment filed within 28 days after its entry.  The court must apply a "stringent" standard when evaluating Rule 59(e) claims.  Ciralsky v. C.I.A., 355 F.3d 661, 673 (D.C. Cir. 2004).  "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

**III.   Analysis**

The precise arguments Petitioners present in their Motion are difficult to discern amid the welter of *ad hominem* attacks they pursue against Tucson officials, Judge Urbina, and government counsel.  As best the Court can determine, they principally contend that Judge Urbina erred in not understanding that Petitioners are current, as opposed to merely past, participants in the Section 8 program.  Mot. at 2.  In addition, they claim that Judge Urbina failed to ensure that HUD fulfilled its requirements under 24 C.F.R. § 982.52.  Id.   Neither affects the prior two rulings, which the Court will turn to after noting that, while Petitioners may seek "mandamus-type relief," the writ of mandamus was "long ago abolished . . . in the district courts."  In re Cheney, 406 F.3d 723, 728-29 (D.C. Cir. 2005).

First, if Petitioners are still asserting a constitutional right to continued participation in Tucson's Section 8 program, Judge Urbina correctly held that such claim has been precluded by the rulings of other federal courts in previous cases brought by the Konarskis.  See Mem. Op. at 8-10.  Not only does Petitioners' argument fail to clear the hurdle of issue preclusion, but it has no legal merit, as  a recent Seventh Circuit decision again reiterates.  See Khan v. Bland, 630 F.3d 519, 522 (7th Cir. 2010) ("Khan [the landlord] does not have a property right in his expectancy to enter into new contracts under the Section 8 program. He has not pointed to any provision of the HAP [Housing Assistance Payment] contract, federal law, or state law that would entitle him to continued participation in the program, and the relevant regulations state that owners/landlords are not entitled to continued participation.").  Petitioners' new arguments do not affect this ruling.  In fact, Petitioners themselves seem to concede this in their Motion,

4

arguing that issue preclusion is not relevant since their claim relates only to the 2010 actions of city officials. Mot. at 6.

Second, Petitioners' efforts to obtain mandamus-type relief are equally unavailing. It may be noted preliminarily that "those invoking the court's mandamus jurisdiction must have a clear and indisputable right to relief; and even if the plaintiff overcomes all those hurdles, whether mandamus relief should issue is discretionary." In re Cheney, 406 F.3d at 729 (internal quotation marks omitted). As Judge Urbina noted, mandamus jurisdiction is only available where, *inter alia*, "'there is no other adequate remedy available to the petitioner.'" Mem. Op. at 11 (quoting Swan v. Clinton, 100 F.3d 973, 977 n.1 (D.C. Cir. 1996)). He then concluded that, "[t]o the extent that the petitioners seek to enforce their May 2010 HAP contracts, they appear to have the alternate and more adequate remedy of bringing a breach of contract claim against the Tucson [Public Housing Agency], which is an actual party to the contracts, instead of imploring the aid of HUD." Id. at 12. This is, of course, an option that is fully available. See Khan, 630 F.3d at 522 ("While [the landlord] may have property rights in his existing HAP contracts and extensions of those contracts, he was afforded all the process that was due by his available post-deprivation remedy of a state law breach of contract action."). In fact, as the Government informs the Court, Petitioners have done just that. On June 1, 2011, Petitioners sued the City of Tucson in Arizona Superior Court in Pima County. See ECF No. 48. By such action, they themselves have thus proven the deficiency of their claim here. That Petitioners may be current Section 8 participants or that HUD has obligations under the Code of Federal Regulations has no effect whatsoever on their ability to pursue alternative remedies.

## IV. Conclusion

For the foregoing reasons, the court will issue a contemporaneous Order denying Petitioners' Motions.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 31, 2012